Tremayne Durham #647007
SBI #OS01613467
New Jersey State Prison
P.O. BOX 861
Trenton, New Jersey 08625

| | | |
|---|---|---|
| TREMAYNE DURHAM | : | **UNITED STATES DISTRICT COURT** |
| PLAINTIFF, | | **FOR THE DISTRICT OF NEW JERSEY** |
| | : | |
| V. | : | CIVIL ACTION NO._____ |
| | | DISTRICT JUDGE: |
| | : | |
| G. KELLEY, C.O.R.; | | TITLE 42 U.S.C.   1983 |
| B. CORREA, C.O.R; | : | |
| W. GRAY, C.O.R.; | | |
| W. VINCENTE, C.O.R.; | : | |
| J. RODRIGUEZ, C.O.R.; | | |
| K. VEGA, C.O.R.; | : | COMPLAINT  AND JURY TRIAL DEMAND |
| Z. GOODWIN, O.F.C.; | | |
| L. JOVANOVIC, O.F.C.; | : | |
| M. DOYLE, O.F.C.; | | |
| SUSAN SPINGLER; | : | |
| NURSE MOBOLANLE EBO, RN; | | |
| NURSE NEAL WEST, RN,BSN;: | | |
| DOCTOR JOHN DOE #1; | | |
| JOHN DOE #2 AND JOHN | : | |
| DOE #3; J. JOHNSON, | | |
| MEDICAL RECORDS CLERK. | | |
| DEFENDANTS. | | |

COMES  NOW,  Tremayne  Durham,  Plaintiff,  Pro  Se  in  the
above  matter,   and beseeches this honorable Court to treat this
instant  cause liberally and afford it the principles of a pro-se
litigant  as   established  by  the  U.S. Supreme Court in Haine
v Kerner,  404   U.S.  519, 92  S.CT.  594,  30  L. Ed. 2d 652
and Estelle v Gamble, 429 U.S. 106.

## I. JURISDICTION AND VENUE

1.  This  is  a  1983  action  brought  to  redress  the  deprivation

under Civil Rights Act enacted by congress to redress the violations of Constitutional Rights under color of State Law, 42 U.S.C. section 1983. This court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. section 1331 and 1343 (a). Jurisdiction over Plaintiff's claims for declaratory relief can be found at 28 U.S.C. section 2201 and 2202. Jurisdiction over Plaintiff's claims for injunctive relief can be found at 28 U.S.C, section 2283 and section 2284 and Rule 65 of the Federal Rules of Civil Procedure. Additionally this court can use supplemental authority over state claims under 28 USC 1367.

2. To redress these acts the plaintiff is seeking a declaratory judgment, punitive and compensatory damages and refund for all legal costs and attorney fees incurred on the Plaintiff to bring this action against all of the above defendants. At all times relevant to this complaint defendants were acting under color of State Law.

3. Plaintiff Request a Trial by a Jury.

## II. PARTIES

4. Plaintiff, TREMAYNE DURHAM, is an Oregon State Prisoner convicted and sentenced by the State of Oregon and is confined as an out-of-state prisoner pursuant to the Out of State Compact Agreement Act (hereafter I.C.A) with the New Jersey Department of Corrections at New Jersey State Prison (Hereafter "NJSP") at 3rd. and Federal Streets, P.O. Box 861, Trenton, New Jersey 08625. Plaintiff is a citizen of the United States.

5. Defendant, G. Kelley is a correctional officer at New Jersey State Prison during the violations complained of herein by Plaintiff. Defendant G. Kelley (Hereafter "Kelley") carries his official duties at the prison's business address, which is New Jersey State Prison (Hereafter "NJSP") 3rd. and Federal Streets, Trenton, New Jersey 08625. At the time of the violations defendant Kelley was working as a correctional officer assigned to the quarantine area located at 7-UP 10 tier. Defendant Kelley responsibilities are to enforce the prison's policies and operating procedures inside the quarantine area, which includes, but not limited to security of the quarantine area. Defendant Kelley is being sued in his individual and official capacity.

6. Defendant B. Correa is a correctional officer at NJSP during the violations complained of herein by Plaintiff.

Defendant B. Correa (Hereafter "Correa") carries out his official duties at the prison's business address, which is "NJSP" 3rd. and Federal Streets, Trenton, New Jersey 08625.

At the time of the violations defendant Correa was working as a correctional officer assigned to the quarantine area located at 7-UP 10 tier. Defendant Correa's responsibilities are to enforce the prison's policies and operating procedures inside the quarantine area, which includes, but not limited to security of

the quarantine area.  Defendant  Correa  is  being  sued  in his

individual and official capacity.


7. Defendant W. Gray is a correctional officer at NJSP during  the

violations complained of herein by Plaintiff.

Defendant W. Gray (Hereafter "Gray") carries his official duties

at the prison's business address, which is "NJSP" 3rd. and Federal

Street , Trenton, New Jersey  08625.

At  the  time  of  the violations  defendant Gray was working as

a correctional officer assigned  to  the  quarantine  area  located

at  7-UP  10  tier.  Defendant  Gray's  responsibilities  are  to

enforce the prison's policies  and  operating  procedures  inside

the quarantine area, which  includes, but not limited to security

of the quarantine area.   Defendant  Gray is being  sued  in  his

individual and official capacity.

8. Defendant W. Vincente is a correctional officer at NJSP during

the violations complained of herein by Plaintiff.  Defendant W.

Vincente (Hereafter "Vincente") carries his official duties at the

prison's  business  address,  which  is  NJSP,  3rd.  and   Federal

Streets, Trenton, New Jersey 08625.

At  the  time  of  the  violations  defendant  was  working  as  a

correctional officer assigned to the quarantine area located at 7-

UP 10 tier.  Defendant Vincente responsibilities are to enforce

the   prison's   policies  and  operating  procedures  inside  the

quarantine area, which includes, but not limited to security of the quarantine area.   Defendant Vincente is being sued in his individual and official capacity.


9. Defendant J. Rodriguez is a correctional officer at NJSP during the violations complained of herein by Plaintiff.

Defendant J. Rodriguez (Hereafter "Rodriguez") carries his official duties at the prison's business address, which is NJSP, 3rd. and Federal Streets, Trenton, New Jersey 08625.  At the time of the violations defendant Rodriguez was working as a correctional officer assigned to the quarantine area located at 7-UP 10 tier.  Defendant Rodriguez responsibilities are to enforce the prison's policies and operating procedures inside the quarantine area, which includes, but not limited to security of the quarantine area.   Defendant Rodriguez is being sued in his individual and official capacity.


10. Defendant K. Vega is a correctional officer at NJSP during the violations complained of herein by Plaintiff.  Defendant K. Vega (Hereafter "Vega") carries his official duties at the prison's business address, which is  NJSP, 3rd. and Federal Streets, P.O. Box 861, Trenton, New Jersey 08625. At the time of the violations defendant Vega was working as a correctional officer assigned to the quarantine area located at 7-UP 10 tier.

Defendant Vega's responsibilities are to enforce the prison's policies and operating procedures inside the quarantine area, which includes, but not limited to security of the quarantine area. Defendant Vega is being sued in his individual and official capacity.

11. Defendant Z. Goodwin is a correctional officer at NJSP during the violations complained of herein by Plaintiff. Defendant Z. Goodwin (Hereafter "Goodwin") carries his official duties at the prison's business address, which is NJSP, 3rd. and Federal Streets, P.O. Box 861, Trenton, New Jersey 08625. At the time of the violations defendant Goodwin was working as a correctional officer assigned to the West Compound 2-Left housing unit.

Defendant Goodwin's responsibilities are to enforce the prison's rules, which includes, but not limited to security for 2-Left housing unit. Defendant Goodwin is being sued in his individual and official capacity.

12. Defendant L. Jovanovic, is a correctional officer at NJSP during the violations complained of herein by Plaintiff.

Defendant L. Jovanovic (Hereafter "Jovanovic") carries his official duties at the prison's business address, which is NJSP, 3rd. and Federal Streets, Trenton, New Jersey 08625.

At the time of the violations  defendant Jovanovic was working  as a correctional officer assigned to the West Compound 2-Left housing unit. Defendant Jovanovic responsibilities are to enforce  the prison's rules, which includes, but not limited to security for 2-Left  housing  unit.  Defendant  Jovanovic  is  being  sued  in  his individual and official capacity.


13.  Defendant  M. Doyle is a correctional officer at NJSP during the violations complained of herein by Plaintiff.  Defendant  M. Doyle (Hereafter "Doyle") carries out his official duties  at  the prison's  business address, which is NJSP, 3rd. and Federal Streets , Trenton, New Jersey 08625.
At the time of the violations  defendant  Doyle  was  working  as a correctional officer assigned to the West Compound 2-Left housing unit.   Defendant Doyle's responsibilities are to enforce  the prison's rules, which includes, but not limited to security for 2-Left housing unit.  Defendant Doyle is being sued in his individual and official capacity.


14. Defendant Susan Spingler is a  nurse at NJSP, during the violations complained  of herein  by plaintiff.  Defendant Susan Spingler  (Hereafter  "Spingler")  carries  her  official  duties at the prison's business address, which  is NJSP, 3rd. and Federal Streets, , Trenton, New Jersey 08625.

At the time of the violations defendant Spingler was working as a nurse assigned to the quarantine area located at 7-UP 10 tier. Defendant Spingler responsibilities are to assess medical needs, refer inmates requests to see a doctor or sick call requests, and dispense medication. Defendant Spingler is being sued in her individual and official capacity.

15. Defendant Nurse Mobolanle. Ebo, RN,. She is a nurse at NJSP, during the violations complained of herein by Plaintiff. Defendant Nurse M. Ebo (Hereafter "Ebo") carries her official duties at the prison's business address, which is NJSP, 3rd. and Federal Streets, , Trenton, New Jersey 08625.

At the time of the violations defendant "Ebo", was working as a nurse assigned to the quarantine area located at 7-UP 10 tier. Defendant "Ebo", responsibilities are to assess medical needs, refer inmates requests to see a doctor or sick call requests; and dispense medication. Defendant "Ebo" is being sued in her individual and official capacity.

16. Defendant Nurse Neal West, RN, BSN,. He is a nurse at NJSP, during the violations complained of herein by Plaintiff. Defendant Nurse N. West (Hereafter "West") carries his official duties at the prison's business address, which is NJSP, 3rd. and Federal Streets, , Trenton, New Jersey 08625. At the time of the

8

violations defendant "West" was  working as a nurse assigned to the quarantine area located at 7-UP 10 tier.  Defendant "West", responsibilities are  to assess medical needs, refer inmates requests to see a doctor or sick call

requests; and dispense medication. Defendant "West", is being sued in his individual and official capacity.

17. Defendant Doctor John Doe #3, upon information and belief is named Dr. Maljean, no first initial is given therefore identified as Doctor John Doe #3. Upon information and belief Dr. Maljean is a doctor at University Hospital, who contracted with NJSP. Defendant Doctor John Doe #3 (Hereafter "John Doe #1) carries out his duties at University Hospital, 150 Bergen St., Room D346, Newark, New Jersey 07101, phone #(973)972-4300. At the time of the violations defendant Doctor John Doe #1 was a doctor assigned to the quarantine area located at 7-UP 10 tier. Defendant doctor John Doe #3 responsibilities are to assess inmates medical needs, provide treatment or refer inmates requests to other medical staff for appropriate treatment. Defendant doctor John Doe #3is being sued in his individual and official capacity.

18. Defendant John Doe #4 information and belief is named C.O.R. Gutowski, first initial not known therefore identified as John Doe #4 He is a correctional officer at NJSP, during the violations complained of herein by plaintiff. Defendant John Doe #4 (Hereafter "John Doe #4) carries his official duties at the prison's business address, which is NJSP at 3rd. and Federal Streets, Trenton, New Jersey 08625. At the time of the violations defendant John Doe #4 was working

1

as a correctional officer assigned to the quarantine area located
at 7-UP 10 tier.   Defendant John Doe #4 responsibilities are
to enforce prison's rules, policies and operating procedures
inside the quarantine area, which includes, but not limited
to security of the quarantine area.  Defendant John Doe #2 is
being sued in his individual and official capacity.

19.  Defendant John Doe #5, upon information and belief is named
C.O.R. Harris, no first initial available therefore identified
as John Doe #5.  He is a correctional officer at NJSP, during
the violations complained of herein by plaintiff.  Defendant
John Doe #3 (Hereafter "John Doe #5") carries his official duties
at the prison's business address, which is NJSP at 3rd. and
Federal Streets, , Trenton, New Jersey 08625.  At
the time of the violations defendant John Doe #3 was working
as a correctional officer assigned to the quarantine area located
at 7-UP 10 tier.   Defendant John Doe #5 responsibilities are
to enforce the prison's rules, policies and operating procedures
inside the quarantine area, which includes, but not limited
to security of the quarantine area.  Defendant John Doe #5 is
being sued in his individual and official capacity.

20.Defendant Judith Johnson is the acting medical records clerk at
New Jersey State Prison during the violations complained of herein
by plaintiff.  Defendant J.Johnson carries out her official duties
at the prisons business address which is NJSP at Third and Federal

2

Streets, Trenton New Jersey 08625.  At the time of the violations defendant was working at the clinic as acting medical records clerk.  Defendants responsibilities are to maintain and record inmates medical records, also to distribute inmates medical records upon request.  Defendant Johnson is being sued in her individual and official capacity.

## NO PREVIOUSLY DISMISSED ACTIONS

Plaintiff has not had an action or appeal dismissed on three or more prior occasions on the grounds that the action or appeal was frivolous, malicious or failed to state a claim upon which relief may be granted.

## III. STATEMENT OF FACTS

21. On 1/3/2018 Plaintiff was diagnosed as having lumbar stenosis requiring epidural steroid injections (See Exhibit A).

22. On 11/11/2019 Plaintiff was issued a cane by Doctor Ashraf Haggag for Plaintiff's stenosis condition (See Exhibit B).

22 (a). On 5/22/20 Plaintiff was told he had to go to quarantine

located at 7-UP 10 tier, on the way there plaintiff was told by unknown correctional officer in a white hazmat suit, he can

not bring his cane on the unit. Plaintiff was told this by C.O. M. Doyle.

23. Plaintiff told C.O. M. Doyle he needed his cane, but was ordered to leave it in his cell at 2-Left/26 cell. Plaintiff complied with the order.

24. Prior to being placed in quarantine 7-Up 10 tier, Plaintiff was never screened for his serious back condition, lumbar stenosis. Per 10:A, State and Federal laws (See Exhibit A).

25. On 5/23/20 Plaintiff told Nurse West that he was having excruciating back pain and needed to see a doctor, and would like his walking cane. Nurse West reply to Plaintiff was "He doesn't need a cane in quarantine and should wait until he gets out to population". Nurse West also said "there is nothing I can do for his back pain". (See Exhibit C and Exhibit D-1).

26. On 5/24/20 Plaintiff told C.O.R. B. Correa he was having serious back pain and needed his cane, "Correa" called 2-left Housing unit by telephone in regard to Plaintiff's access to his cane. Officer Z. Goodwin relayed back "Plaintiff complains too much were not opening his cell for his cane." Officer L. Jovanovic said "Plaintiff is an asshole he gets nothing". (See Exhibit C-1 and Exhibit D-1).

27. No medical help or cane was given.

28. On 5/25/20 Plaintiff again requested access to his cane

and told "Correa" he was in pain. (See Exhibit D-1).

29. No medical assistance and/or cane was given.

30. On 5/26/20 Plaintiff requested help from C.O.R. K. Vega for his severe back pain and access to his cane. (See Exhibit D-1).


31. No medical assistance and/or cane was given.

32. On 5/27/20 Plaintiff told nurse S. Spingler about his agonizing back pain and his need for his cane. Plaintiff also told C.O.R. Correa about his back pain and need for his cane. (See Exhibits D-1 and E.)

33. No medical assistance and/or cane was given.

34. On 5/27/20 on 2nd shift (1:30 p.m to 9:30p.m) Plaintiff told C.O.R. W. Gray about his back pain due to his serious back condition and that he needed his cane, and  shower chair.
(See Exhibits E and E-1.)

35. No medical help was given, no cane or shower chair given.

36. On 5/28/20 Plaintiff again told Nurse West, that he needed to see a doctor and needed

his cane.  And if possible use of a shower chair and that he has a serious back condition called stenosis. (See Exhibits D-2, and E-1.)

37. No medical help or cane and shower chair provided.

38. On 5/28/20 on 2nd shift, Plaintiff requested help for his

back pain from Dr. John Doe #1, who identified himself as Dr. Maljean. He told Plaintiff he only works CRAF and is a mental health doctor and couldn't help me. (See Exhibit E-1.)

39. On 5/29/20 Plaintiff told C.O.R. Harris, identified as John Doe #3. about his severe back pain and his need for his cane. No medical help given and no cane given. (SEE Exhibit D-2)


40. On 5/29/20 Plaintiff told C.O.R. J. Rodriguez, about his severe back pain and his need for his cane. (See Exhibit D-2).

41. No medical assistance given, no help cane given.

42. On 5/30/20 Plaintiff told Nurse Ebo about his acute back pain and need to have access to his cane. (See Exhibit D-2).

43. No medical help or cane provided.

44. On 5/30/20 Plaintiff notified C.O.R. G. Kelley of his perpetually excruciating back pain and needed to have access to his cane.

45. No medical help given, no help cane given.

46. On 5/31/20 Plaintiff again requested help for his acute back pain and need to access his cane from nurse Ebo. (See Exhibit D-2).

47. No medical assistance given, no help cane given.

48. On 5/31/20 on 2nd shift, Plaintiff was in the shower that did not have a handrails or shower chair and he experienced excruciating lower back pain that cascaded down to his legs.

Without support of his cane and no handrails Plaintiff fell to the floor in pain. An emergency medical code was called and medical personnel came and picked up Plaintiff off the floor and Plaintiff was placed in a wheelchair.

49. Plaintiff went down approximately four flights of stairs which exacerbated the acute back pain Plaintiff was already in.

50. Plaintiff was taken to the prison clinic trauma room where he was given doses of unknown pain medication. Plaintiff was later admitted to the clinic infirmary where he was given a large shot of liquid pain medication. Plaintiff stayed in the prison infirmary for several days under observation and medical treatment. SEE Exhibits H-H-5

51. While Plaintiff was in quarantine, 7-Up 10 tier, from 5/22/20 to 5/31/20, there were no forms available to write inquiries, grievances or make medical requests. The Jpay Kiosk which would have been an alternative was broken from 5/22/20 to 5/31/20.

It is used to write and send inquiries, grievances and medical requests electronically. (See Exhibit F).

52. On or about 9-21-20 plaintiff while at clinic told J. Johnson he needed his medical records from 5-15-20 to present for litigation. Defendant Johnson told plaintiff Im not going to help you sue my co-workers.

53. Plaintiff has made multiple requests for his medical records which were supposed to be issued in 30 days. No medical records given so plaintiff filed a inquiry, no records given. Plaintiff then filed a grievance no medical records given plaintiff then appealed with no results. Plaintiff received assistance from The New Jersey Corrections Ombudsman. SEE Exhibit I-I6

54. Melissa Matthews hand delivered a additional medical request I mailed to her which finally resulted in plaintiff receiving his records. SEE Exhibit I-6

55. J.Johnson acting medical records clerk has a pattern and practice of concealing evidence, specifically inmates requested medical records for litigation purposes.

56. On or about 12/11/2020 O.F.C. L. Jocanovic and O.F.C. Z. Goodwin were overheard conspiring not to give plaintiff his cane in the future. SEE EXHIBIT G-3


## IV EXHAUSTION OF ADMINISTRATIVE REMEDIES

52. On 6/11/20 Plaintiff filed an inquiry to get this practice stopped. On 6/11/20 Susan Spingler wrote: "This inquiry would be referred to nursing management for review."(See Exhibit G)

53. Plaintiff fully exhausted his administrative remedies via the Jpay kiosk. Immediately after response from the above inquiry Plaintiff filed a grievance dated 6/19/20 reiterating

the same statements in initial inquiry.

54. On 7/26/20 Susan Spingler again wrote: "Your previous inquiry would be referred to nursing management for review."

55. Plaintiff appealed the response on 8/1/20 reiterating the same statements in initial inquiry.

56. Plaintiff has exhausted all applicable available administrative grievances pursuant to 42 U.S.C. section 1991 (e). (See Exhibits G, G-1, ~~and~~ ~~G-2~~).

57. Prior to filing this complaint about the practices, acts and failure to act, which resulted in Plaintiff's 8th Amendment Rights violations, when it is well established Law that defendants can not violate Plaintiff's Rights. Defendants knew or should have known that their actions described above were in direct violation of well established Court decisions designed to protect Plaintiffs rights under the Constitution of the United States.

58. Defendants actions as set forth in the Complaint and paragraphs above demonstrates defendants' arbitrary, capricious, malicious and intentional infringement upon Plaintiffs rights with reckless disregard for the consequences of their actions and/or inactions.

59. Plaintiff reasserts 15, through 56 and states defendants practices, acts and failure to act, are in violation of clearly established law known or should have been known to defendants

divesting them of any shield of qualified inmunity.

## I. FIRST CAUSE OF ACTION

### VIOLATION OF PLAINTIFF'S 8TH AMENDMENT RIGHTS.

### DELIBERATE INDIFFERENCE

60.   Plaintiff repeats and reiterates paragraphs 20 through 59 as it has been set forth herein.

## II. SECOND CAUSE OF ACTION

61. The 15 Defendants: G. Kelley, B. Correa, W. Gray, W.Vincente, J.  Rodriguez, K. Vega, Z. Goodwin, L. Jovanovic, M. Doyle, Susan Spingler,  Nurse  M. Ebo ,  Nurse N. West, Doctor John Doe  #1, John Doe #2 and John Doe #3. (Herein after "Defendants") each  had personal  knowledge  and/or  acquaintance  by  their practices, acts, and failure to act.

Defendants   arbitrarily,   capriciously,   maliciously,   and intentionally  engaged  in  unlawful actions which were cruel and unusual  which  resulted  in  Plaintiff suffering unnecessary and wanton pain violating Plaintiff's 8th Amendment Rights.

## III.  THIRD CAUSE OF ACTION
### UNITED STATES REHABILITATION ACT AND/OR AMERICANS WITH

## DISABILITIES ACT

62.  Plaintiff  repeats  and  reiterates  paragraphs  20  through  61
as it has been set forth herein.

63.  Defendants  each  had personal knowledge and/or acquiescence
relating  to the violations of the U.S. Rehabilitation Act and/or
Americans   with   Disabilities   Act  complained  here  in  this
complaint.

## IV.  FOURTH CAUSE OF ACTION
### EVIDENCE   CONCEALED   OR   DESTROYED   NEGLIGENTLY   AND   NEGLIGENT SPOILATION OF EVIDENCE.

64. Plaintiff repeat and reiterates paragrapths 20 to 74 as it has
been set forth herein.

65. Defendant had personal knowledge of operating practice and
policy that allowed Plsintiff disruption in acces to his medical
records knowing that litigation exist or is probable of commiting
gross negligence.

The  law  under  negligence  spoilation  of  evidence  requires
Defendants  not  to  destroy  or  conceal  evidence  knowing  that
litigation exists or is probable.

66. Plaintiff's  was  diagnosed  with  severe  and multiple back
complications  for  which  Plaintiff  was  prescribed a cane by a
doctor to assist Plaintiff with walking and standing.

67.   Defendants'   acquiescence   and   had   personal   knowledge   of operating   practices   and   policy   that   allowed   Plaintiff   not   to have   access   to his cane and medical treatment causing Plaintiff to   fall   resulting   in Plaintiff's exacerbating his degenerative back condition.

68.   The   U.S.   Rehabilitation   Act   and/or   Americans   with Disabilities   Act   requires   that Defendants provide a reasonable accommodation   for   Plaintiff's   disability,   which   they   failed to   do   when   the Defendants did not allow him access to his cane and medical treatment.

69.   Defendants   acting   under   the   color   of State Law violated the   U.S.   Rehabilitation   Act and/or Americans with Disabilities Act,   by   not   allowing   Plaintiff access to his cane and medical treatment.

70.   As   a   direct   and   proximate result of Defendants violation of the U.S. Rehabilitation Act and/or Americans with Disabilities Act,   Plaintiff   suffered   unnecessary   and   wanton pain, and had to   be   hospitalized   in   the   prison's   infirmary for three days and prescribed medication for pain.

71.   By   their   practices   acts   and   failure   to act, Defendants arbitrarily, capriciously, maliciously, and intentionally engaged in   unlawful actions, which resulted in Plaintiff's 8th Amendment Rights being violated.

72.   All   dates   mentioned   in   the   statement   of   facts   are   an

approximate.

## **PRAYER FOR RELIEF**

73. Defendants by their practices, acts, and failure to act have arbitrarily, capriciously, maliciously, and intentionally engaged in unlawful actions, which resulted in Plaintiff's 8th Amendment Rights being violated. Plaintiff has suffered and will continue to suffered irreparable injury as a result of unlawful acts, practices, and failure to act by the Defendants as alleged herein, unless Plaintiff is granted the injunctive relief he requests:

WHEREFORE: Plaintiff requests that this Court grant the following relief:

A. Adjudge and declare Defendants actions set forth in this complaint's paragraphs above demonstrate they arbitrarily, capriciously, maliciously, and intentionally deprived Plaintiff of his 8th Amendment Rights under the Constitution of the United States by unlawful acts, practices, and failure to act and with reckless disregard for their actions. Consequently, Plaintiff is entitled to an award for compensatory damages in the amount of $100,000., One Hundred Thousand Dollars. From each defendant which hopefully is a sufficient amount to deter Defendants from continuing such practices as one, some, or all of the Defendants

have a history of being sued for the very same thing as alleged in this complaint.

B. Adjudge and declare Defendants actions as set forth in the complaint's paragraphs above demonstrate they arbitrarily, capriciously, maliciously, and intentionally deprived Plaintiff of his 8th Amendment Rights under the Constitution of the United States by authorizing actions with reckless disregard for the consequences of their actions. Consequently, Plaintiff is entitled to an award for punitive damages in the amount of $100,000., One Hundred Thousand Dollars. From each defendant which hopefully is a sufficient amount to deter Defendants from continuing such practices as one, some, or all of the Defendants have a history of being sued for the very same thing as alleged in this complaint.

C. Adjudge and declare Defendants actions as set forth in the complaint's paragraphs above demonstrate they violated the 8th Amendment under cruel and unusual punishment. Consequently, Plaintiff is entitled to an award of $100,000., One Hundred Thousand Dollars. From each defendant to deter Defendants from continuing such actions.

E. Adjudge and declare Defendants actions as set forth in the complaint's paragraphs above demonstrate they violated the U.S. Rehabilitation Act and/or Americans with Disabilities Act. Consequently, Plaintiff is entitled to an award for punitive

damages in the amount of $100,000., One Hundred Thousand Dollars. From each defendant which hopefully is a sufficient amount to deter Defendants from continuing such actions.

F. Permanent injunction ordering Defendants their agents, official employees, and any and all persons acting in concert with them under color of state law to take all necessary actions to: (1) Correct the violations herein this complaint by immediately stopping the practice and interfering with prisoner's medical treatment as complained of in this complaint, and any other amenities this court deems just and fair.

G. Appointment of Counsel.

H. Order a Jury Trial.

I. Grant such other relief as the Court deems just and equitable.

## VERIFICATION

Pursuant to 28 U.S.C. section 1746, I declare and verify under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Executed on **February 27**$^{th}$ ,2021

DATED:

Respectfully Submitted,

TREMAYNE DURHAM #647007
SBI #OS01613467

15