<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TREMAYNE DURHAM,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>G. KELLEY, et al.,<br><br>　　　　　　　Defendants. | Civil Action No. 21-4565 (MAS) (LHG)<br><br>OPINION |

<u>SHIPP, District Judge</u>

　　　Plaintiff is incarcerated at New Jersey State Prison in Trenton, NJ. He is proceeding *pro se* with a civil rights Complaint pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, the Rehabilitation Act ("RA"), 29 U.S.C. §§ 701–796, and state law. (Compl., ECF No. 1.) The Court has screened the Complaint pursuant to 28 U.S.C. § 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. As set forth below, the Court will dismiss the Complaint without prejudice for failure to state a claim.

I.　　<u>BACKGROUND</u>

　　　The Court will construe the factual allegations of the Complaint as true for the purpose of this Opinion. This case arises from Defendants' alleged denial of Plaintiff's walking cane while he was in quarantine. Plaintiff names correction officers Kelley, Correa, Gray, Vincente,

Rodriguez, Vega, Goodwin, Jovanovic, and Doyle; nurses Spingler, Ebo, and West; "John Doe" doctors; and medical records clerk Johnson as defendants.

In January 2018, medical officials diagnosed Plaintiff with lumbar stenosis, which required epidural steroid injections. (*Id.* ¶ 21.) In November 2019, a doctor prescribed Plaintiff a walking cane for his condition. (*Id.* ¶ 22.)

On May 22, 2020, prison officials told Plaintiff that he needed to go to the quarantine unit. (*Id.* ¶ 22(a).) On his way there, Defendant Doyle told Plaintiff that that he could not bring his cane. (*Id.*) Although Plaintiff explained to Defendant Doyle that Plaintiff needed his cane, Defendant Doyle ordered Plaintiff to leave it in his cell. (*Id.* ¶ 23.) Plaintiff complied. (*Id.*)

The next day, Plaintiff told Defendant Nurse West that he was having excruciating back pain, needed to see a doctor, and would like his cane. (*Id.* ¶ 25.) Nurse West told Plaintiff, "[you] do[ not] need a cane in quarantine and should wait until [you] get[] out to [general] population." (*Id.*) Nurse West also said, "there is nothing I can do for [your] back pain." (*Id.*)

On May 24, 2020, Plaintiff informed Defendant Correa that he was having serious back pain and needed his cane. (*Id.* ¶ 26.) Defendant Correa called Plaintiff's Housing Unit by telephone regarding Plaintiff's access to his cane. (*Id.*) Defendant Goodwin answered and said that Plaintiff "complains too much" and "we're not opening his cell for his cane." (*Id.*) Defendant Jovanovic added that "Plaintiff is an asshole" and "he gets nothing." (*Id.*)

Plaintiff continued to inform prison officials about his back pain and need for his cane. Plaintiff approached Defendant Correa on May 25, 2020, Defendant Vega on May 26, 2020, and Defendant Correa again on May 27, 2020 about his pain and need for his cane. (*Id.* ¶¶ 28, 30, 32.) Plaintiff also told Defendant Nurse Spingler on May 27, 2020. (*Id.* ¶ 32.)

Plaintiff further requested the use of a shower chair and to see a doctor. (*Id.* ¶¶ 34, 36.) On May 27, 2020, he told Defendant Gray that he needed his cane and a shower chair because of

2

his serious back condition. (*Id.* ¶ 34.) He approached Nurse West again on May 28, 2020 and asked for his cane and a shower chair. (*Id.* ¶ 36.) He also told her he needed to see a doctor. (*Id.*)

Plaintiff requested help for his back pain from Defendant Dr. Maljean on May 28, 2020. (*Id.* ¶ 38.) Dr. Maljean, however, told Plaintiff that he could not help him because he is a mental health doctor. (*Id.*)

Over the next few days, Plaintiff also informed Defendants Harris, Rodriguez, Nurse Ebo, and Kelley of his pain and need for his cane. (*Id.* at ¶¶ 39–44). Each time he asked, however, Defendants refused to provide Plaintiff with his cane or render medical assistance. (*Id.* at ¶¶ 27, 29, 31, 33, 35, 37, 41, 43, 45, 47).

Then, on May 31, 2020, while Plaintiff was in the shower, he experienced excruciating lower back pain that cascaded down his legs. (*Id.* at ¶ 48.) Without the assistance of his cane, shower chair, or shower handrails, Plaintiff fell to the floor in pain. (*Id.*)

Emergency personnel came, lifted Plaintiff off the floor, and placed him in a wheelchair. (*Id.*) Emergency personnel took Plaintiff to the prison clinic trauma room where prison officials gave him pain medication. (*Id.* ¶ 50.) Officials later took Plaintiff to the clinic infirmary, where he remained for several days under observation and medical treatment. (*Id.*)

While Plaintiff was in quarantine between May 22, 2020 and May 31, 2020, there were no forms available to write inquiries, grievances, or make medical requests. (*Id.* ¶ 51.) The Jpay Kiosk, which would have provided Plaintiff a means to write and send inquiries, grievances, and medical requests electronically, was broken. (*Id.*)

In September 2020, Plaintiff told Defendant Johnson that he needed his medical records from May to bring a lawsuit. (*Id.* ¶ 52.) Defendant Johnson told Plaintiff that he would not help Plaintiff sue his co-workers. (*Id.*) Plaintiff made additional requests and filed a grievance, but Defendant Johnson did not provide him with the records. (*Id.* ¶ 53.) Only after the New Jersey

Corrections Ombudsman hand delivered Plaintiff's request for medical records to Defendant Johnson did Plaintiff finally receive his medical records. (*Id.* ¶ 54.) Plaintiff alleges that Defendant Johnson has a pattern and practice of concealing evidence – specifically when inmates request medical records for litigation purposes. (*Id.* ¶ 55.)

## II.   LEGAL STANDARD

District courts must review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), or seeks redress against a governmental employee or entity. *See* 28 U.S.C. § 1915A(a). District courts may *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* §§ 1915(e)(2)(B), 1915A(b). According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678. Moreover, while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

4

### III. DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, the Rehabilitation Act ("RA"), 29 U.S.C. §§ 701–796, and state law, contending that Defendants' deliberate indifference to Plaintiff's back condition, refusal to provide him with his walking cane and a shower chair, and discrimination against Plaintiff violated his civil rights. The Court further construes the Complaint as contending that Defendant Johnson further violated Plaintiff's civil rights by denying him access to the courts.

#### A. Eleventh Amendment Immunity

As an initial matter, Plaintiff brings claims against Defendants in their official and individual capacities. (*See* ECF No. 1 ¶¶ 5–20.) As explained below, the Court will dismiss Plaintiff's claims to the extent they seek non-injunctive relief against Defendants in their official capacities because the Eleventh Amendment bars such claims.

The Eleventh Amendment of the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, the Eleventh Amendment imposes a jurisdictional bar against individuals bringing suit against a state or its agencies in federal court. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). Moreover, the bar extends to claims against a state official in his or her official capacity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").

Eleventh Amendment immunity, however, is not absolute. A state may consent to suit in federal courts, or Congress may abrogate Eleventh Amendment protections. *See Port Auth. Trans-*

5

*Hudson Corp. v. Freeney*, 495 U.S. 299, 304 (1990). Further, the Eleventh Amendment does not bar a suit for prospective injunctive relief against a state official who violates federal law, *see Ex parte Young*, 209 U.S. 123, 158–59 (1908), or a suit against officials in their individual capacities, even if the actions that are the subject of the suit were part of the officials' governmental duties. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991).

Here, Plaintiff asserts claims against Defendants in their official and individual capacities for injunctive, compensatory, and punitive damages. (*See* ECF No. 1 ¶¶ 5–20, 73.) All named Defendants, however, are state officials. Accordingly, the Eleventh Amendment bars Plaintiff's claims against Defendants brought in federal court, except for claims against Defendants in their individual capacities and claims seeking injunctive relief against Defendants in their official capacities. *See Will*, 491 U.S. at 71; *Ex parte Young*, 209 U.S. at 158–59. The Court, therefore, will dismiss with prejudice Plaintiff's claims to the extent they seek non-injunctive relief against Defendants in their official capacities because the Eleventh Amendment bars such claims.

### B. Section 1983 Claims

Having narrowed the scope of Plaintiff's claims and the potential relief available, the Court must now determine whether Plaintiff states a claim under § 1983. As set forth below, Plaintiff fails to state a claim for relief, and the Court will dismiss the remainder of Plaintiff's § 1983 claims without prejudice.

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). Plaintiff alleges that Defendants, acting under the color of state law, were deliberately indifferent to Plaintiff's need for his cane and shower chair and denied him access to the courts by hindering his ability to access his medical records. (*See generally* ECF No. 1.)

### 1. Deliberate Indifference Claims

The Eighth Amendment proscribes more than just physically barbarous punishments. *Estell v. Gamble*, 429 U.S. 97, 102 (1976). It also proscribes unnecessary and wanton infliction of pain. *Id.* at 102–03. Deliberate indifference to an inmate's serious medical needs constitutes "unnecessary and wanton infliction of pain[.]" *Id.* at 104.

To state a deliberate indifference claim, an inmate must allege facts showing (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). The seriousness of the inmate's medical need may also be determined by reference to the effect of denying a particular treatment. *Id.* A condition is serious if denial of a particular treatment would cause death, degeneration, or extreme pain. *See id.*

Deliberate indifference is a "subjective standard of liability consistent with reckless as that term is defined in *criminal* law." *See Nicini*, 212 F.3d at 811 (emphasis added). To be found liable, the prison official must know of and disregard an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). A plaintiff, therefore, must allege and plead enough factual matter to allow the court to infer reasonably that the official was subjectively aware of a substantial risk of serious harm and that the official disregarded that risk. *See id.*; *Iqbal*, 556 U.S. at 678.

Courts in the Third Circuit have found deliberate indifference in a variety of contexts, including where: (1) prison authorities deny reasonable requests for medical treatment; (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it;

7

(3) necessary medical treatment is delayed for non-medical reasons; and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017). Regardless of the context, however, the defendant must have, and the plaintiff must allege, the sufficiently culpable state of mind noted above. *Farmer*, 511 U.S. at 838 ("[O]ur cases mandate inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment.").

Here, the Complaint satisfies the "serious medical need" prong. Medical officials diagnosed Plaintiff with lumbar stenosis, for which they prescribed nonsteroidal anti-inflammatories and physical therapy. (ECF No. 1 ¶ 21.) A doctor later prescribed a cane for Plaintiff. (*Id.* ¶ 22.) Moreover, Plaintiff's condition allegedly caused him serious and agonizing back pain, and Plaintiff claims to have fallen from the pain. (*Id.* ¶¶ 25, 49.) Such allegations are sufficient to demonstrate a serious medical need. *See Monmouth County*, 834 F.2d at 347.

The Complaint, however, fails to satisfy the "deliberate indifference" prong. Plaintiff fails to allege that each of the Defendants had the requisite mental state, *i.e.*, that each of the Defendants were subjectively aware of a substantial risk of serious harm to Plaintiff by denying him his cane or a shower chair. (*See generally* ECF No. 1.) Nor does Plaintiff plead any facts from which the Court could infer the requisite mental state. (*See generally id.*) Plaintiff alleges that prison officials were aware of his back pain and need for his cane because Plaintiff told them as much. (*See id.* ¶¶ 23, 25–26, 28, 30, 32, 34, 36, 38–40, 42, 44, 46.) At most, Plaintiff alleges that some Defendants intentionally denied Plaintiff's access to his cane. (*See id.* ¶ 26.) But nothing Plaintiff alleges plausibly suggests that Defendants subjectively appreciated a serious risk of harm to Plaintiff if he remained in quarantine without his cane or a shower chair. (*See generally id.*) Plaintiff, therefore, fails to state a deliberate indifference claim. Accordingly, the Court will dismiss without prejudice Plaintiff's deliberate indifference claims.

### 2. Access to Courts Claim

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). Two general categories of denial of access to the courts claims exist: (1) claims that systemic official action frustrates a plaintiff in preparing and filing suits at the present time, where the suits could be pursued once the impediment has been removed; and (2) claims of specific cases that cannot be tried (or tried with all material evidence), no matter what official action may be in the future. *Christopher v. Harbury*, 536 U.S. 403, 412–14 (2002). Regardless of the category, a plaintiff must identify a "nonfrivolous," "arguable" underlying claim and must address the underlying claim by allegations in the complaint sufficient to give fair notice to a defendant. *Id.* at 415–16. In other words, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996).

Under this standard, the Complaint fails to state a claim for relief. Plaintiff alleges that the kiosk for making inquiries and grievances was down while he was in quarantine. (*See* ECF No.1 ¶ 51.) Plaintiff also alleges that he made multiple requests for his medical records for litigation purposes and that Defendant Johnson refused his requests. (*See id.* ¶¶ 52–53.) Plaintiff further alleges that Defendant Johnson has a pattern and practice of denying inmates' requests for medical records for litigation purposes. (*See id.* ¶ 55.) Plaintiff, however, fails to identify an underlying claim for which he will bring or could have brought because he does not allege any actual injury as a result of his inability to access his medical records. (*See generally id.*) The Court, accordingly, will dismiss without prejudice Plaintiff's access to courts claim.

### C. Violation of Rehabilitation Act/Americans with Disabilities Act Claim

Plaintiff also asserts violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213 and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 701–796. The Court will dismiss without prejudice Plaintiff's ADA and RA claims for failure to state a claim.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has held that Title II of the ADA applies to state prisons. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1996). The RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). "In light of the similarities between . . . the ADA and RA and their implementing regulations, we construe and apply them in a consistent manner." *Disabled Action of Pa. v. Se. Pa. Trans. Auth.*, 635 F.3d 87, 91 n.5 (3d Cir. 2011).

To state a claim under either the ADA or RA, an inmate must allege (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012). A qualified individual with a disability is one "who, with or without reasonable modification to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The ADA defines the term "disability" as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). The implementing regulation defines "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 28 C.F.R. § 35.104(2).

The Complaint fails to state a claim under the ADA or RA. Plaintiff alleges that the ADA and RA require Defendants to provide a reasonable accommodation for Plaintiff's disability and that Defendants failed to do so when they withheld access to his cane and medical treatment. (*See* ECF No. 1 ¶¶ 68–70.) The Complaint, however, does not allege that Plaintiff is a qualified individual or that he was subject to discrimination by reason of his disability. *See Brown*, 492 Fed. App'x at 215. Accordingly, the Court will dismiss Plaintiff's ADA and RA claim without prejudice.[1]

### D. State Law Negligence Claims

Finally, Plaintiff asserts state law claims for "evidence concealed or destroyed negligently and negligent spoliation of evidence." (ECF No. 1 ¶¶ 64–65.) The Court will exercise its supplemental jurisdiction over these claims. *See* 28 U.S.C. § 1367(c)(3). For the reasons below, the Court will dismiss Plaintiff's state law claims without prejudice.

New Jersey does not recognize a separate tort for negligent spoliation of evidence. *See Tartaglia v. UBS PaineWebber, Inc.*, 197 N.J. 81, 122–23 n.6 (2008) (noting that the Court had "not in the past recognized," and "d[id] not now recognize, any separate tort for negligent

---

[1] Even if Plaintiff could state a claim against Defendants, Plaintiff could not maintain an ADA or RA claim against Defendants in their individual capacities because most courts "have held that Title II does not authorize suits against government officers in their individual capacities." *See Williams v. Hayman*, 657 F. Supp. 2d 488, 502 (D.N.J. 2008).

spoilation"). Instead, such a claim may be resolved by applying traditional negligence principles. *Gilleski v. Comm. Med. Ctr.*, 336 N.J. Super. 646, 648 (App. Div. 2001). "To state a cause of action for negligence, a plaintiff must plead: '(1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty by defendant; and (3) an injury to plaintiff proximately caused by defendant's breach.'" *Id.* at 652.

Even under traditional negligence principles, the Complaint fails to state a claim. Plaintiff alleges that Defendants, aware that litigation exists or is probable, were aware of and complicit with operating practice and policy that disrupted Plaintiff's access to his medical records. (*See* ECF No. 1 ¶ 65.) The Complaint, however, fails to allege or identify any injury to Plaintiff as a result of Defendants' alleged disruption of Plaintiff's access to his medical records. Accordingly, the Court will dismiss Plaintiff's state law claims without prejudice.

### IV. CONCLUSION

For the reasons set forth above, the Court will dismiss without prejudice Plaintiff's Complaint. If Plaintiff believes he can allege facts entitling him to relief, he may file an amended complaint. An appropriate Order follows.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE