UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TREMAYNE DURHAM, | Civ. No. 21-4565 (MAS) (JBD) |
| Plaintiff, | MEMORANDUM ORDER |
| v. | |
| C.O.R. G. KELLEY et al., | |
| Defendants. | |

Plaintiff Tremayne Durham filed a motion for the appointment of *pro bono* counsel pursuant to 28 U.S.C. § 1915(e)(1). [Dkt. 27.] The Court has reviewed and considered Durham's motion without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Durham's motion is granted.

\* \* \*

Durham is a *pro se* litigant currently incarcerated in New Jersey State Prison (NJSP). He alleges that his constitutional rights were violated when defendants G. Kelley, B. Correa, W. Gray, W. Vincente, J. Rodriguez, K. Vega, Z. Goodwin, L. Jovanovic, M. Doyle, (correctional officers); Susan Springler, Mobolale Ebo, Neal West (nurses); John Doe 1, 2, and 3 (doctors); and Judith Johnson (medical records clerk) (collectively, "defendants")[1] repeatedly denied requests for his cane and a shower chair. [Dkt. 1.] As a result, Durham alleges, he fell in the shower and

---

[1] Because Durham did not know the first initials of the following defendants, at the time of filing his complaint, he initially named Dr. Maljean as Defendant Doctor John Doe #3, C.O.R. Gutowski as John Doe #4, and C.O.R. Harris as John Doe #5. [Dkt. 1, ¶¶ 17-19.]

1

suffered a back injury. [Dkt. 1.] With his amended complaint, Durham submitted an application to proceed *in forma pauperis* (IFP). [Dkt. 1-3.] In October 2021, the Court granted Durham's IFP request but dismissed the complaint. [Dkts. 3, 5.] Durham successfully appealed the dismissal order and the Court reopened the matter in November 2023. [Dkts. 6-11]; *see Durham v. Kelley*, 82 F.4th 217 (3d Cir. 2023). Since then, Durham has filed this motion for the appointment of *pro bono* counsel [Dkt. 27] and several documents requesting various forms of relief to serve defendants.

\* \* \*

Relevant to Durham's motion for *pro bono* counsel are issues regarding service of process in this case that have complicated the proceedings. The difficulties began when the Court reopened the case and directed the Clerk to mail plaintiff USM-285 forms for each of the named defendants. [Dkt. 13.] Durham completed the USM-285s indicating that service could be effected at the NJSP. When the Court received the USM-285s from Durham, it issued the summonses the same day for service by the USMS. [Dkt. 15.] Several of the summonses, however, were returned unexecuted—specifically, for New Jersey Department of Corrections (NJDOC) defendants J. Rodriguez, W. Vincente, B. Correa, G. Kelley, M. Doyle, Neal West, and K. Vega. The USMS was unable to serve Correa, Kelley, Doyle, West, and Vega at the prison because they no longer worked there. [Dkts. 18, 19, 20, 21, 30.] Rodriguez could not be served because plaintiff only had a first initial and more than one employee at the prison at that time had that first initial and last name. [Dkt. 16.]

Vincente was not served because he was not at the prison at that day and time. [Dkt. 17.]

\* \* \*

To seek assistance with serving defendants, Durham filed three discovery motions. He filed his first motion on February 6, 2024 seeking to access personnel records to permit him to serve defendants J. Rodriguez, W. Vincente, B. Correa, G. Kelley, M. Doyle, Neal West, and K. Vega. [Dkt. 28.] Following his motion, Durham attempted to locate defendants via an Open Public Records Act (OPRA) request, but NJDOC denied the request as exempt from disclosure. [Dkt. 31.] On March 5, 2024, Durham filed a request to supplement his motion for discovery to demonstrate these efforts. *Id*. The Court ordered the Office of New Jersey Attorney General (OAG) to file a letter advising of the status of service and the OAG's representation of the NJDOC defendants. [Dkt. 35.] The Court then supplemented its order on April 17, 2024, directing the OAG to advise whether it would agree to accept service on behalf of the remaining unserved NJDOC defendants. [Dkt. 38.]

On April 25, 2024, the OAG declined to accept service on behalf of four defendants (Doyle, Vega, Kelley, and Correa) because they no longer worked for NJDOC but did provide under seal those defendants' full names and last known addresses. [Dkt. 41.] As to the remaining defendants, J. Rodriguez and W. Vincente, the OAG advised that they still worked at NJSP and could be served there. *Id*. The OAG also provided the full name of Rodriguez. *Id*. The next month, the OAG supplemented its letter, explaining that it could not serve or provide a last

3

known address for nurse Neal West because he was not an employee of NJDOC. [Dkt. 42.]

Durham filed two additional motions for discovery in aid of his service efforts. [Dkts. 43, 47.][2] The first requested the addresses of defendant Judith Johnson (and Dr. Neal West [Dkt. 43], and the second requested the full names of NJDOC defendants Harris and Gutowski, and mental health doctor Maljean. [Dkt. 47.] The NJDOC defendants opposed the motion as to the requests related to defendants West and Johnson, on the basis that it did not "possess the sought-after discovery in question" and therefore the Court should deny the motion. [Dkt. 45.] The NJDOC defendants did clarify in a subsequent letter that the OAG was working with the NJDOC to locate the full names and last known addresses of officers Harris and Gutowski. [Dkt. 48.] In July 2024, the OAG continued to update the Court on its efforts to locate information related to NJDOC defendants for purposes of perfecting service. [Dkts. 51, 54.] That same month, Durham filed a supplement to his original motion for *pro bono* counsel, which added additional exhibits documenting his good-faith attempts to seek counsel. [Dkt. 52.] Most recently, as of September 6, 2024, the United States Marshals Service could not serve defendants Harris and Rodriguez because there were multiple individuals with the same name

---

[2]   Because the Court will grant Durham's motion for *pro bono* counsel, it will deny without prejudice Durham's other pending motions seeking discovery in aid of his efforts to identify and effect service of the summons and complaint on certain defendants. [Dkts. 28, 43, 47.] Upon appointed counsel's appearance, the Court will discuss with counsel appropriate next steps to identify and serve those defendants.

at the prison, and defendant Gutowski because he no longer works there. [Dkts. 62, 63, 64.] Accordingly, the summonses for those defendants have been returned unexecuted, furthering complicating service of process.

As the discussion above reflects, service has been complicated, chaotic, and time-consuming for the parties and the Court alike. Some progress has been made, but several defendants still remain to be served.

\* \* \*

The Court now turns to Durham's motion for the appointment of *pro bono* counsel. Durham argues that he needs appointed counsel for several reasons. First, he is unable to afford an attorney. [Dkt. 27.] Second, he says that this case will require "extensive discovery and compliance with complex discovery rules." *Id.* Third, he asserts that this action "involves the technical field of medicine," which will require an "expert in neurology." *Id.* Fourth, he states that he has "little litigation experience" and "no legal training." Fifth, he explains that he cannot now represent himself because several inmates allegedly assisted him in drafting both the complaint and motion for *pro bono* counsel, but those inmates are now "too busy" or are "too concerned about being retaliated against by Defendants." *Id.* Finally, Durham explains that, with his brother's assistance, he contacted approximately twelve attorneys seeking representation; all but one, he says, did not respond, and the attorney who did respond declined to assist him. *Id.*, [Dkt. 27-1].

It is well established that civil litigants do not have a constitutional right to be represented by counsel. *See Tabron v. Grace*, 6 F.3d 147, 153-54 (3d Cir. 1993).

5

Although the Court has discretion to appoint an attorney to represent an individual unable to afford counsel, it must exercise care in doing so, mindful that volunteer lawyers' time should not be wasted on frivolous cases. *See id.* As a preliminary matter, the Court must consider whether a claim or defense has "arguable merit in fact and law." *Id.* at 155. If the Court determines that there is some merit, then the Court considers the following non-exhaustive factors: (i) the applicant's ability to present his or her case; (ii) the complexity of the legal issues; (iii) the degree to which factual investigation is required and the ability of the applicant to pursue such investigation; (iv) the amount a case is likely to turn on credibility determinations; (v) whether the case will require testimony from expert witnesses; and (vi) whether the applicant can retain and afford counsel on his or her own behalf. *Parham v. Johnson*, 126 F.3d 454, 457-58 (3d Cir. 1997) (citing *Tabron*, 6 F.3d at 155-57). The Court must balance these factors carefully, along with practical limitations on the Court's ability to appoint counsel. Those limitations include "the ever-growing number of prisoner civil rights actions filed each year in the federal courts; the lack of funding to pay appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation." *See Christy v. Robinson*, 216 F. Supp. 2d 398, 408 n.20 (D.N.J. 2002) (citing *Tabron*, 6 F.3d at 157) (internal citations omitted).

Applying the *Tabron* framework here, the Court first asks whether Durham's complaint—in which he alleges, among other things, that defendants violated his civil rights under 42 U.S.C. 1983 by depriving him of his prescribed medical

6

equipment—has "arguable merit in fact or law."[3] *Parham*, 126 F.3d at 457 (citing *Tabron*, 6 F.3d at 155). The Court finds that it does. Durham alleges that the repeated denial of his prescribed cane due to his lumbar stenosis diagnosis, coupled with no access to a shower chair, led him to fall in the shower and injure his back. [Dkt. 1, Ex. A]. To present a *prima facie* case under the Eighth Amendment based on the denial of medical care, a prisoner must show that defendants acted "with deliberate indifference of his or her serious medical needs." *See Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Parham*, 126 F.3d at 458.[4]

---

[3]     Durham also asserts additional causes of action under the Rehabilitation Act ("RA") and the Americans with Disabilities Act ("ADA"), and he argues that evidence was negligently concealed or destroyed. While the Court focuses on Durham's Eighth Amendment claim for present purposes, it notes in respect of his RA and ADA claims that the Third Circuit emphasized that, although Durham will eventually have to prove his claims, "construing his complaint liberally, as required at this stage, he is a 'qualified individual' with a disability who was denied equal access to the showers at the prison, a qualifying public service." *See Durham*, 82 F.4th at 227.

[4]     In *Montgomery*, the plaintiff had been diagnosed with a heart condition and HIV, and alleged that prison officials, a physician, and a medical care provider deprived him of prescribed treatment and medications. 294 F.3d at 495. The court held that the plaintiff provided a "non-frivolous, *prima facie* case of deliberate indifference to a serious medical need" and thus could show arguable success on the merits. *Id.* at 501. In *Parham*, a physician diagnosed the plaintiff with tinnitus and prescribed medicated ear drops. *Parham*, 126 F.3d at 455. After using the prescribed ear drops, "Parham complained of burning and stinging sensations in his ear," but the doctor allegedly continued to prescribe the ear drops. *Id.* The court found that this was adequate evidence to present a potentially meritorious claim. *Id.* at 458.

Durham provides some evidence to support a cognizable claim that has potential merit for purposes of the *Tabron* factors. First, he provides evidence that on January 3, 2018, he was diagnosed with having "lumbar stenosis requiring epidural steroid injections." [Dkt. 1, Ex. 4.] Second, because of his diagnosis, his treating prison physician issued him a cane. *Id*. Third, throughout Durham's complaint, he alleges that he repeatedly notified various defendants that he was having back pain and that he needed his cane. [Dkt. 1.] Despite these complaints and requests, however, Durham alleges that defendants repeatedly refused him access to his cane. *Id*.

Like *Parham*, Durham was diagnosed with a medical condition and consequently was prescribed medical equipment. *Parham*, 126 F.3d at 458. And like *Montgomery*, Durham was (allegedly) deprived of that use after repeated complaints of back pain. Therefore, restricting Durham's access to his cane could be an example of a "denial of medical care." *Montgomery*, 294 F.3d at 499. Such a denial, if proven, could be an omission by the correctional officers, nurses, and doctors to ignore the physician's medical prescription, and may rise to the level of deliberate indifference necessary to establish an Eight Amendment claim. *Id*. At summary judgment and trial, of course, Durham must establish sufficient proof that the alleged repeated omissions by the various defendants happened and that they amounted to deliberate indifference. For present purposes, however, the Court concludes that Durham's complaint and the materials submitted in support of the

8

motion sets forth some evidence of a case that has arguable merit in fact and law to support his civil rights action.

The Court's threshold conclusion that Durham presents an arguably meritorious claim does not, of course, end the inquiry. Next, the Court turns to the *Tabron* factors. Balancing them, the Court will exercise its discretion to appoint *pro bono* counsel.

The first factor is Durham's ability to present his case. The Court considers here "the plaintiff's education, literacy, prior work experience, and prior litigation experience." *Parham*, 126 F.3d at 459 (citing *Tabron*, 6 F.3d at 156). While Durham's ability to file documents and generally follow the Court's procedures show some legal knowledge and literacy, "this fact alone does not conclusively establish that [plaintiff is] able to present his own case." *Id*. In fact, in *Tabron*, the court held that a "prisoner's lack of legal experience and the complex discovery rules clearly put him at a disadvantage in countering the defendant's discovery tactics." *Id*.

In this case, based on Durham's complaint and motion for appointment of *pro bono* counsel, it appears he can read, write, and understand English, and that he has some basic legal knowledge. [Dkt. 1, 27.] Durham explains that he has "little litigation experience," "no legal training," and that he cannot manage the complexities of discovery. [Dkt. 27.] Durham, however, has filed a complaint, complaint, a motion for *pro bono* counsel, and both a request to supplement discovery and an extension of time, as well as a successful appeal to the Third

9

Circuit. [Dkts. 1, 6, 7, 27, 31, 43, 47.] Thus, Durham has shown that he can comply with the Courts' procedures, but "this fact alone does not conclusively establish that [Durham] [can] present his own case." *Parham*, 126 F.3d at 459 (citing *Tabron*, 6 F.3d at 156). While Durham has complied with the Court's procedures, he indicates that fellow inmates provided him legal assistance but have recently stopped doing so for fear of retaliation. [Dkt. 27.] Therefore, there is a genuine concern regarding whether Durham can present his own case. The Court finds this factor to be neutral.

The second *Tabron* factor requires the Court to consider the complexity of the legal issues. *Tabron*, 6 F.3d at 156. "Where the legal issues are complex, it will probably serve everyone if counsel is appointed." *Id*. If the legal issues are simple, *pro se* incarcerated parties should have no issue understanding their burden. *See Dykeman v. Ahsan*, Civ. No. 12-4634 (PGS), 2017 WL 5762398, at *5 (D.N.J. Nov. 28, 2017) (citing *Parham*, 126 F.3d at 459) ("The deliberate indifference standard used to analyze Eighth Amendment claims is not a complex legal issue."). Durham's Eighth Amendment deliberate indifference claim is not a complex one; a lay person can comprehend the basis of the claim. But despite its abstract simplicity, "comprehension alone does not equal ability to translate the understanding into presentation." *Parham*, 126 F.3d at 459. The Court also considers "proof going towards the ultimate issue and the discovery issues involved." *Id*.

In this case, ongoing service issues and complexities in presenting Durham's case weigh in favor of appointing counsel. The ongoing service issues, detailed above, have plagued Durham since the beginning, and stunted the progression of this case. Durham has been persistent in his efforts to serve defendants. As described in more detail in *Tabron* factor three, below, Durham has sought documents from the NJDOC through OPRA requests to identify the last known addresses of various defendants. [Dkt. 27, Exhibit A, A-1]. Although both the NJDOC and the OAG have worked with the Court to provide relevant identification information, only some progress has been made. Before Durham can fully dive into pursuing his claims on the merits, he must serve defendants, and service alone has proven to make this case complicated, adding to the complexity of presenting his case. These considerations counsel in favor of appointing counsel.

Along the same lines, the third *Tabron* factor considers "the degree to which factual investigation is required and the ability of the applicant to pursue such investigation." *Parham*, 126 F.3d at 460 (citing *Tabron*, 6 F.3d at 156). In *Tabron*, the court explained that the "prisoner's predicament in attempting to obtain facts," (*i.e.*, being incarcerated), should be considered in the analysis. *Id.* Further, courts should acknowledge that it is difficult for a *pro se* incarcerated plaintiff to understand complex discovery rules. *Id.*

Here, Durham's incarceration exemplifies "the prisoner's predicament in attempting to obtain facts" as discussed in *Tabron*. *Id.* In addition, potentially complicated further factual investigation will be required. As briefly noted above,

11

Durham contacted and requested defendants' "disciplinary and personnel files" from the NJDOC. [Dkt. 27, Exs. A, A-1.]. The NJDOC denied the request, stating that all disciplinary and personnel records are exempt from disclosure pursuant to NJSA 47:1A-10 and NJSA 47:1A-1.1. *Id.* For records on nurses and the medical records clerk, NJDOC directed Durham to contact Rutgers University Correctional Health Care (UCHC), which he did, and UCHC has yet to respond to his requests. [Dkt. 27, Exs. A, A-1, A-2, and A-3.] Not only must Durham obtain evidence while incarcerated, but he now faces what could be complicated discovery issues involving disclosure exemptions for records that he believes will assist his case. *Id.* For these reasons, this factor favors the appointment of *pro bono* counsel.

The fourth *Tabron* factor concerns "the amount a case is likely to turn on credibility determinations." *Parham*, 126 F.3d at 460. Since most cases involve at least some credibility determinations, this Court considers whether "the case [will be] solely a swearing contest." *Id.* "[A] 'swearing contest' occurs when the resolution of the case 'may well depend on nothing more than whom the finder of fact believes.'" *Abulkhair v. U.S. Postal Serv.*, Civ. No. 13-7796, 2014 WL 1607379, at *4 (D.N.J. Apr. 22, 2014) (quoting *Wassell v. Youkin*, Civ. No. 07-326, 2008 WL 73658 at *5 (W.D. Pa Jan. 7, 2008)).

In this case, Durham claims that at trial the case will "likely involve conflicting testimony, and counsel would help plaintiff to better present evidence and cross examine witnesses." [Dkt. 27.] The Court agrees. Durham says that he made repeated requests for his cane that defendants repeatedly rejected; it can be

12

readily anticipated that one or more defendants will deny that they ever received such requests from Durham. The Court finds that the fourth factor weighs in favor of appointing *pro bono* counsel.

The fifth *Tabron* factor considers "whether the case will require testimony from expert witnesses." *Tabron*, 6 F.3d at 156. The Third Circuit has acknowledged "the need for expert testimony in proving a claim based on medical injury." *See Montgomery*, 294 F.3d at 504; *see also Parham*, 126 F.3d at 460 (citing *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987) (holding that expert testimony is necessary when the seriousness of injury or illness would not be apparent to a lay person). Durham asserts that his case requires an expert to prove his medical injuries. *Montgomery*, 294 F.3d at 504. Specifically, he argues that he needs an "expert in neurology [to] prove the existence and magnitude of [his] injuries." [Dkt. 27.] While Durham can explain the physical manifestation of pain, it is unlikely that he can adequately describe to the jury possible nerve damage related to his lumbar stenosis diagnosis and his alleged worsened condition. Since Durham alleges that defendants are "responsible for exacerbating related injuries . . .," the case will likely require an expert to conduct an evaluation to prove the existence of any changes or lack thereof. *Id.* Therefore, this factor favors appointing *pro bono* counsel.

The sixth *Tabron* factor considers "whether the applicant can retain and afford counsel on his or her own behalf." *Parham*, 126 F.3d at 461. In this case, the Court confidently can assume that Durham cannot afford counsel.

13

Moreover, Durham has made a good-faith attempt to obtain counsel. *See* [Dkt. 27, Ex. B-1-4.] He has reached out to over twelve attorneys; most did not answer. *Id*. The Center for Wrongful Convictions responded, but denied Durham's request because the organization does not handle civil lawsuits. [Dkt. 27, Ex. B-4.]. In addition, on July 7, 2024, Durham filed a supplemental motion including three additional letters addressed to firms hoping to seek counsel. [Dkt. 52.] In his supplemental exhibits, Durham provides two responses, both denying representation in this case. *Id*. This shows that Durham has been consistent in his attempts to secure counsel. As a result, this factor weighs heavily in favor of appointing *pro bono* counsel.

* * *

Balancing the *Tabron* factors together, and in view of the particular circumstances of this case, the Court concludes that appointment of *pro bono* counsel is warranted.

Good cause appearing and for the reasons set forth above,

IT IS on this 13th day of September, 2024,

ORDERED that Durham's motion for the appointment of *pro bono* counsel [Dkt. 27] is GRANTED; and it is further

ORDERED that the Clerk shall attempt to identify an eligible attorney to represent Durham *pro bono* pursuant to 28 U.S.C. § 1915(e)(l); and it is further

ORDERED that the Court will issue supplemental orders, as appropriate, upon entry of appointed counsel's appearance; and it is further

ORDERED that Durham's discovery-related motions [Dkts. 28, 43, and 47] are DENIED at this time without prejudice to his right to re-file them, if necessary, once appointed counsel has entered an appearance; and it is further

ORDERED that the Clerk shall mail a copy of this Order to Durham via regular United States mail.

J. Brendan Day
United States Magistrate Judge

15